**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANUEL HERNANDEZ, JR.,<br><br>      Petitioner,<br><br>   v.<br><br>WARDEN, SALINAS VALLEY STATE PRISON,<br><br>      Respondent. | Case No.: 1:11-cv-00231-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 27)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK OF THE COURT TO SUBSTITUTE WILLIAM MUNIZ AS NAMED RESPONDENT |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner was convicted in 2008 for shooting at an occupied motor vehicle and three counts of assault with a firearm which involved sentence enhancements and gang allegations. The Tulare County Superior Court sentenced him to an indeterminate 32-years-to-life, and he remains in custody.

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction, except for the sentence, in which the court ordered that the sentenced imposed for one of the assault charged be stayed and directed the trial court to amend the

1

abstract of judgment to reflect that fact. (Doc. 45, Ex. A). Petitioner filed a petition for review in the California Supreme Court that was summarily denied. (Lodged Documents ("LD") 3; 4). On February 25, 2010, the trial court amended the abstract of judgment in compliance with the 5th DCA's ruling. (LD 5).

On January 11, 2011, Petitioner filed a state habeas petition in the Tulare County Superior Court, arguing that the trial court should have discharged his trial attorney; the petition was denied. (LD 6; 7). Petitioner then filed a habeas petition in the 5th DCA raising, for the first time, the issues of ineffective assistance of trial and appellate counsel; this petition was summarily denied. (LD 8; 9). Finally, Petitioner filed a habeas petition in the California Supreme Court, again arguing ineffective assistance of trial and appellate counsel. This petition, likewise, was denied. (LD 9; 10).

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

On April 23, 2007, about 5:30 p.m., Romaldo Mata, Alejandro Alvarez, and Andres Garcia were at a fast-food restaurant in Visalia. A young man Mata recognized, who was 15 or 16 years old, crossed the parking lot while Garcia was outside the restaurant and tried to put a black hood over his head, but the hood fell off. The young man turned around and looked at Garcia two or three times. Garcia went back into the restaurant. The young man "took off."

The young man returned with seven or eight other males. The oldest was 18 years old. They posted three young men at each door to the restaurant. One of the doors was locked. At the door closest to the drive-through, the young men opened the door and looked into the restaurant. Mata made eye contact with some of them and they left the front of the restaurant.

The young men went toward the parking lot of a grocery store. Mata recognized some of the young men. Alvarez, Garcia, and Mata entered Alvarez's Dodge Durango SUV and drove away. Alvarez drove, Mata sat in the front passenger seat, and Garcia sat in the back seat. The young men were standing in the parking lot. Two people were talking on their cell phones.

Appellant drove to the fast-food restaurant with his friend, Jose Garcia, in a Dodge Ram pickup truck. When appellant arrived, the young men in the grocery store parking lot were pointing toward Alvarez's SUV. One of the youths tried to get into appellant's pickup truck. Alvarez exited the parking lot and stopped at a stop sign on Chinowth Street.

Appellant was one car behind Alvarez's SUV. Appellant, who was driving, followed the SUV. Garcia sat in the passenger seat. When Alvarez came to Tulare Avenue, he made a right turn and then another right turn when he reached Linwood Street. Appellant continued to follow the SUV, running a red light at the intersection of Linwood and Noble.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

    Alvarez drove across a freeway overpass and stopped for a red light at the intersection of Linwood and Mineral King Avenue. Appellant was now directly behind the SUV. Appellant flashed the sign for the Norteño gang with one hand and extended the middle finger of his other hand. When the light turned green, Alvarez turned left onto Mineral King. Appellant followed the SUV, then accelerated quickly to keep up with Alvarez, who was also driving fast. Appellant caught up with the SUV, driving along the right side of it.

    Mata heard gunshots and stuck his head out the window to see who was firing the gun. Mata saw appellant holding a short-barreled revolver. Appellant pointed the gun toward Mata and shot at him. Mata thought appellant fired three or four shots. A bullet hit the windshield of the SUV in the front of where Mata was sitting. Another bullet struck the right taillight. Alvarez slammed on the brakes and then drove away.

(Doc. 45, Exh. A, pp. 2-4).

## DISCUSSION

### I.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II.    Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker,

501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

### III. Review of Petitioner's Claims

The petition alleges the following as grounds for relief: (1) the trial court erred in denying Petitioner's motion to discharge defense counsel; and, (2) Petitioner was deprived of his constitutional right to the effective assistance of counsel at trial.

#### A. Denial Of Petitioner's Motion To Discharge His Trial Attorney

Petitioner first contends that the trial court erred in denying his motion to discharge his defense attorney.  This contention is without merit.

1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> Appellant contends the trial court erred in denying his motion to dismiss his retained counsel and that the trial court violated his state and federal rights to due process, a fair trial, and to have counsel of his choice. We disagree.
>
> **Motion to Dismiss Retained Counsel**
>
> Appellant's trial commenced on September 22, 2008. Appellant complained to the trial court about a plea bargain that did not go forth and said he wanted to be represented the way he should be represented. The court explained a change of counsel would require a continuance and asked appellant if he wanted to represent himself. Appellant replied he did not want to represent himself, but sought a new lawyer.

Appellant told the court he wanted to fire his attorney, Mr. Stephen Girardot. The court told appellant that Girardot was at least his second attorney. Girardot explained he was ready to go to trial and had finished a complete investigation of the case. Appellant complained he had not looked at his paperwork the entire time of his incarceration and had not read witness statements to see if there was anything appellant could tell Girardot. Appellant conceded he believed Girardot "has done everything that I asked him that he told me he has done."

Appellant said he did not feel he was being represented the way he should. Girardot told the court he had talked to appellant about his case and discussed generally what would happen at trial. Girardot had not discussed trial strategy with appellant. Because there had been prior attempts to reach a plea agreement, Girardot evaluated appellant's case for him. This discussion included prosecution and defense evidence.

Appellant said he was "just asking, you know, for just a new lawyer who I think that would represent me a little better...." Appellant told the court there were witnesses who had not been subpoenaed. Girardot said that he had made six attempts to contact the young hooded man who first encountered Garcia in the fast-food parking lot. Girardot told the court he attempted to contact a prosecution witness without success. Girardot explained: "[e]very witness that our investigation has brought forward as being [a] potential defense witness [did] not pan out, period. There has been no one to talk to, no one to interview, no one to discuss the case with."

When asked by the trial court whether he had followed up with all witnesses developed by the prosecutor's investigation, Girardot replied affirmatively. Appellant stated that he was not trying to play games with the court. The court stated it considered the applicable legal standards, citing People v. Lara (2001) 86 Cal.App.4th 139 (Lara). The court noted that, based on the representations of appellant and Girardot, appellant would be adequately represented at trial. The court expressed concern that appellant would have to proceed without adequate representation if it relieved Girardot. The court noted Girardot is a very experienced lawyer.

The court further found appellant's request to be dilatory. The court explained that appellant had opportunities to bring up his concerns before but waited until the first day of trial. Furthermore, Girardot was appellant's second retained counsel. The court denied appellant's request to relieve his counsel.

**Analysis**

Due process of law comprises a right to appear and defend with retained counsel of one's own choice. (People v. Courts (1985) 37 Cal.3d 784, 790-791.) A nonindigent defendant's right to discharge his or her retained counsel is not absolute. A court can deny such a motion if discharge of counsel will result in significant prejudice to the defendant, or if it is not timely and will result in disruption to the orderly processes of justice. The Sixth Amendment right to counsel of choice is limited by the countervailing state interest in proceeding to prosecutions in an orderly and expeditious basis. Courts may take into account practical difficulties of assembling the witnesses, lawyers, and jurors at the same place and time. (People v. Ortiz (1990) 51 Cal.3d 975, 983-984; Lara, supra, 86 Cal.App.4th at p. 153.)

In People v. Keshishian (2008) 162 Cal.App.4th 425, 429 (Keshishian), the defendant waited until the day of trial to request the dismissal of his trial attorneys. His only stated reason for doing so was that he had lost confidence in them. Witnesses had already been subpoenaed and scheduled. The trial court applied the correct legal standard and rejected the defendant's motion. The Keshishian court held the trial court did not err in denying the defendant's last minute request to replace his counsel. (Ibid.)

Appellant's request, as with the defendant in Keshishian, occurred on the first day of trial.

> Appellant's complaint of his counsel was vague. Witnesses had already been subpoenaed and scheduled. Counsel had prepared for trial. The trial court's finding that appellant's request to replace his counsel was dilatory was supported by the fact that appellant had twice before substituted counsel. A change of counsel would have necessarily caused a delay in the proceedings. (See People v. Turner (1992) 7 Cal.App.4th 913, 919.)
>
> The defendant has the burden of demonstrating an abuse of discretion. (People v. Jeffers (1987) 188 Cal.App.3d 840, 850.) (A defendant's motion, made on the day set for trial, was untimely. (Ibid.)) Appellant has failed to carry his burden of demonstrating the court abused its discretion in denying his motion to replace his counsel, which would have also required a continuance of his case on the first day of trial. We reject appellant's claim.

(Doc. 45, Ex. A, pp. 4-7).

### 2. Federal Standard.

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and therefore is properly considered in a habeas proceeding. Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), *cert. denied*, 513 U.S. 947, 115 S.Ct. 357 (1994), *overruled on other grounds by* Schell v. Witek, 218 F.3d 1017 (9th Cir.2000). It is well settled that when a criminal defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. See id. at 1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir.1990). While a defendant has the right to make a motion for new counsel based on the defendant's perception of ineffective assistance of counsel, he does not have an automatic right to the substitution of counsel simply because he is dissatisfied with appointed counsel's performance. Jackson v. Ylst, 921 F.2d 882, 888 (9th Cir.1990). The Sixth Amendment guarantees effective assistance of counsel; it does not guarantee a "meaningful relationship" between an accused and his attorney. See Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. Schell v. Witek, 218 F.3d 1017, 1024–25 (9th Cir.2000) (en banc). The habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the

Sixth Amendment." Id. at 1026.

        3.  <u>Analysis</u>.

Under California law, a <u>Marsden</u> hearing is held when a defendant requests that the court discharge his appointed counsel and appoint another attorney in their stead. The nature of the hearing is to determine whether the defendant's right to counsel would be substantially impaired by requiring defendant to proceed with the original appointed attorney. <u>People v. Marsden</u>, 2 C.3d 118, 123 (1970). A petitioner so situated does not have an automatic right to new counsel to assist him in making such a motion. <u>LaGrand v. Stewart</u>, 133 F.3d 1253, 1276 (9th Cir. 1998). Petitioner does have the right, however, to have the trial court conduct an inquiry into his reasons for dissatisfaction with counsel. <u>Brown v. Craven</u>, 424 F.2d 1166, 1170 (9th Cir. 1970). The real and more critical issue for petitioner is whether he received a full and fair hearing on the matter.

Here, as discussed previously, the 5th DCA affirmed the trial court's discretionary decision to deny Petitioner's <u>Marsden</u> motion, concluding that the motion, brought on the first day of trial, was dilatory, that Petitioner had twice previously substituted attorneys, that his current attorney had subpoenaed witnesses, investigated the case, and was ready to proceed to trial, and that Petitioner's objections to continued representation by his counsel were "vague." Indeed, Petitioner's criticisms of his attorney's performance are generalized and lacking in specific details. Despite acknowledging that his counsel had done everything Petitioner had asked him to do, Petitioner insisted that his attorney had not made available certain documents and witness statements, and had not discussed trial strategy with him, and he believed that another attorney "would represent [him] a little better."

Prior to trial, Petitioner had many opportunities to raise his objections to the trial judge regarding his attorney's lack of communication with him. Given that Petitioner had previously substituted counsel, and given his eleventh hour request on the first day of trial, it is not surprising that the state court concluded that the <u>Marsden</u> motion was dilatory. Moreover, Petitioner's lack of detail in explaining why he wanted another lawyer is not only a deficiency in the motion itself, but also suggests an absence of compelling substantive grounds for the motion that further supports the state court's conclusion that Petitioner lacks legitimate grounds for his motion and was simply trying to

1  delay the proceedings.

2  Further, although Petitioner claimed that his attorney had not discussed "trial strategy" with him or given him access to witness lists, at the hearing counsel indicated he had discussed evidence with Petitioner, had evaluated the case, and had made numerous efforts to contact the prospective witnesses suggested by Petitioner. That counsel and Petitioner had engaged in this degree of communication is not indicative of a breakdown in the attorney-client relationship that would implicate the Sixth Amendment nor does it in any way establish that counsel was not performing adequately or that counsel had a conflict of interest with his client. Schell v. Witek, 218 F.3d at 1024–26.

Significantly, Petitioner does not contend that the trial court failed to conduct a thorough inquiry into the grounds for his motion; rather, he is dissatisfied with the trial court's decision vis-à-vis substituting counsel. As mentioned, however, just because a defendant is dissatisfied with appointed counsel's performance does not entitle him to a new attorney. Jackson v. Ylst, 921 F.2d at 888. The federal right to counsel guarantees only *the effective assistance* of counsel, not a "meaningful relationship" between an accused and his attorney nor even that the accused may have an attorney that he or she likes. See Morris v. Slappy, 461 U.S. at 14. The state court's rejection of this claim, therefore, was not contrary to nor an unreasonable application of clearly established federal law. Accordingly, the claim should be denied.

**B.     Ineffective Assistance Of Counsel**

Petitioner next contends that he was denied his constitutional right to the effective assistance of trial counsel. This contention is also without merit.

1.     The State Court's Adjudication.

Petitioner first raised the issue of ineffective assistance in his state petition in the 5th DCA and repeated his contention again in the state supreme court. Both appellate courts summarily denied the claim without issuing a reasoned decision for the denial. When a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams,

—— U.S. ——, ——, 133 S.Ct. 1088, 1091 (2013).

Moreover, where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784. Accordingly, the Court will independently review Petitioner's claim of ineffective assistance of trial counsel.

2.      Federal Standard.

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989). Thus, to prevail, Petitioner must show two things. First, he must establish that trial counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 112 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Id. In effect, the AEDPA standard

is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

    3.  Analysis.

      a.  Failure to Share Discovery.

In the First Amended Petition, Petitioner contends that trial counsel failed to provide him with pre-trial discovery:

> "Petitioner informed Mr. Girardot that he had never received any discovery, e.g., police reports, statements and witnesses. So he asked his attorney could he get copies of said information? That request went unfulfilled, which left this young Petitioner unaware of what he was facing because Mr. Girardot was not forthcoming with information either."

(Doc. 27, p. 7).

Initially, it should be noted that there is no "clearly established" federal law regarding a trial attorney's obligation to provide hard paper copies of documents received as part of pre-trial discovery. Rather, it would appear that the question of failing to provide discovery is simply subsumed within the larger issue of whether, under all of the circumstances, counsel's performance was deficient. In that regard, Respondent notes that, apart from the brief statement cited above, Petitioner provides no detailed information regarding specific items of discovery he believes counsel had an obligation to deliver to him. Moreover, the record establishes that counsel and Petitioner had frequent contact and communication in court before the commencement of the trial (Reporter's Transcript ("RT"), vol. 1, pp. 11-12), that counsel discussed with Petitioner the prosecution's plea offer as well as both the defense evidence and the prosecution's evidence (RT, vol. 1, pp. 8; 13; 15), that counsel also explained his own evaluation of the case to Petitioner and what Petitioner could expect at trial (RT, vol. 1, pp. 14-15), and that counsel had talked to Petitioner about which witnesses he felt would be

1  beneficial to the defense at trial. (RT, vol. 1, pp. 16-18). Additionally, Petitioner conceded to the trial
2  judge that his attorney "has done everything that I asked him that he told me he has done," (RT, vol. 1,
3  p. 13), that counsel had "given his all" (RT, vol. 1, p. 14), and that Petitioner had not provided any
4  evidence to suggest that counsel had not prepared for trial in the manner required of him. (RT, vol. 1,
5  pp. 15-16).
6       Given the foregoing circumstances, there is simply nothing in the record to indicate that
7  counsel's failure to provide the physical documents produced in pre-trial discovery, as opposed to
8  merely discussing their content with Petitioner, amounted to deficient performance under the Sixth
9  Amendment. As mentioned, in the absence of any clearly established federal law on the issue of an
10 attorney's obligation to produce paper documents from discovery to a client, the issue is the adequacy
11 of counsel's overall performance, Petitioner himself conceded that counsel had performed adequately,
12 and nothing in his vague criticism regarding discovery documents requires a different conclusion.
13      Moreover, the Court cannot find any prejudice, even assuming that Petitioner is correct that his
14 attorney did not provide paper discovery documents. As mentioned above, counsel appears to have
15 adequately discussed trial strategy, witnesses, and potential outcomes with Petitioner prior to trial,
16 which would necessarily include any relevant information gleaned from pre-trial discovery. Since
17 Petitioner was apparently already informed of the *substance* of any relevant discovery, the failure to
18 provide him with a paper copy could not have been prejudicial, since the only purpose of providing a
19 paper copy would be to inform him of the documents' substance, a matter already disclosed to
20 Petitioner by his attorney. For these reasons, Petitioner's Strickland argument fails as to the purported
21 failure to provide discovery.
22                b.     Plea Negotiations.
23 Here, Petitioner contends that his trial counsel was ineffective for failing to make a counter-
24 offer to the prosecutor during plea negotiations. In his petition, Petitioner explains that, during plea
25 negotiations, the prosecutor offered a stipulated sentence of 31 years and 8 months if Petitioner
26 pleaded no contest to the three counts of attempted premeditated murder. (Doc. 27, p. 7). Petitioner
27 asked his attorney to counter the prosecution's offer with an offer of "something around 20 years, for
28

the lesser charged offenses which was three counts of assault with a firearm." (Id.). Petitioner alleges that counsel refused to present the counter-offer, telling Petitioner that it was a "waste of time." (Id.). Since Petitioner was acquitted at trial of the three counts of attempted premeditated murder, Petitioner now reasons that the acquittals demonstrate that the counter-offer was reasonable and, thus, that counsel was ineffective for refusing to present it to the prosecution. (Id.).

First, Respondent correctly notes that there is no "clearly established" federal law regarding a defense attorney's obligation to make a counter-offer when the original offer from the prosecution has been rejected by the client. Thus, the Court must look to the more general case law relating to plea negotiations in general.

The Supreme Court has stated that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Padilla v. Kentucky, ––– U.S. ––––, ––––, 130 S.Ct. 1473, 1486 (2010) (citing, inter alia, Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366 (1985)). The Ninth Circuit has held that the holding and rationale of Hill specifically applies in the situation where a defendant claims that counsel's deficient performance caused him to reject a plea offer and proceed to trial. Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir.2003); see also Martinez v. Felker, No. CV 04–2960–MMM (MAN), 2009 WL 393166, at *6 (C.D.Cal.2009) (citing Nunes). A defendant has the right to make a reasonably informed decision whether to accept a plea offer; and trial counsel must give the defendant sufficient information regarding a plea offer to make an intelligent decision. See Turner v. Calderon, 281 F.3d 851, 880–81 (9th Cir.2002) (citations omitted). When a lawyer fails to give a client plea advice, that lawyer does not make a strategic decision. United States v. Wilson, 719 F.Supp.2d 1260, 1269 (D.Or.2010) (citing Boria v. Keane, 99 F.3d 492, 498 (2d Cir.1996)). However, counsel is not "required to accurately predict what the jury or court might find"; or to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881. See also Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir.1986) (mere inaccurate prediction of outcome in criminal case, standing alone, does not constitute ineffective assistance) (citations omitted); Doganiere v. United States, 914 F.2d 165, 168

(9th Cir.1990) (attorney's inaccurate prediction of potential sentence is not ineffective assistance if it "does not rise to the level of a gross mischaracterization of the likely outcome of his case"); Chacon v. Wood, 36 F.3d 1459, 1464 (9th Cir.1994) (finding a "gross" mischaracterization of the likely sentence outcome sufficient to allege ineffective assistance claim where defendant was told he would serve three months if he pleaded guilty but was sentenced to ten years). Although "[c]ounsel cannot be required to accurately predict" the outcome of rejecting a plea offer, trial counsel "can be required to give the defendant the tools he needs to make an intelligent decision." Turner v. Calderon, 281 F.3d 851, 881 (9th Cir.2002).

The prejudice prong of Strickland "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. More specifically, while the Supreme Court has held that Strickland applies in the context of plea bargaining, the Court has not addressed the narrower question of precisely what constitutes prejudice when a petitioner rejects a plea offer and proceeds to a fair trial. The Ninth Circuit has held that to establish prejudice from incorrect advice resulting in rejection of a plea offer, Petitioner "must show that there is a reasonable probability that he would have accepted the plea agreement had he received accurate advice from his attorney." Hoffman v. Arave, 455 F.3d 926, 941–942 (9th Cir.2006), judgment vacated in part on other grounds by Arave v. Hoffman, 552 U.S. 117 (2008); see also Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir.2003).

Here, even assuming that a trial attorney's conduct is deficient if he refuses to make a counter offer to the prosecution, the record simply does not support Petitioner's contention this was the case. Other than Petitioner's own self-serving statement, there is no evidence in the record that Petitioner ever asked his attorney to make a counter-offer of "around twenty years" on the assault charges or that counsel told him such a counter-offer would be a waste of time. Indeed, as Respondent points out, the record is to the contrary. Before trial, the prosecutor indicated that he and defense counsel had "been in discussions about a possible resolution." (RT Aug. 29, and Sept. 2, 2008, p. 1). At a later point, the trial judge indicated "I understand we've continued this matter a couple of times. Your lawyer and the DA have been negotiating, and I assume that your lawyer has kept you up to date on what's going on."

1  (Id., p. 13). Petitioner nodded affirmatively. (Id.). Finally, as mentioned previously, Petitioner has
2  conceded that his trial counsel did everything he had asked of him. (RT, vol. 1, p. 14). In the absence
3  of any evidence in the record that Petitioner actually asked his attorney to make the 20 year counter-
4  offer and counsel had refused, there is no basis for concluding that counsel was ineffective.

5  Moreover, even were those circumstances true, Respondent is correct that it is mere
6  speculation that the prosecution would have seriously considered an offer that was less than two-thirds
7  of the sentence the original prosecution offer had required. Much of the case law regarding plea
8  negotiations involves failure to communicate between counsel and client, failure to enter into
9  meaningful plea negotiations by defense counsel, or failure to timely respond to the prosecution's
10 offer. Here, the claim involves none of those factors; instead, it involves a counter-offer, which is
11 necessarily more speculative since it is being presented by Petitioner, not the prosecution. A habeas
12 record may occasionally contain information regarding how Petitioner's counsel viewed the defense
13 case, but rarely will it contain useful evidence about the prosecution's state of mind or its objectives
14 and parameters during plea negotiations.

15 In this case, it appears that defense counsel was indeed negotiating in good faith and that the
16 prosecution had made a good-faith offer that Petitioner rejected. At that point, the possibility that any
17 further negotiations would yield a better result for Petitioner is speculation. There is nothing in the
18 record to suggest that the prosecution would have accepted a 20-year stipulated sentence to the lesser
19 assault charges. Indeed, the fact that the prosecution proceeded to trial obviously indicated that the
20 prosecutor believed he could convict Petitioner of the three attempted premeditated murder charges.
21 This fact suggests that the prosecution would <u>not</u> have considered dropping those more serious charges
22 entirely in favor of the lesser charged offenses. The fact that the jury acquitted Petitioner of those
23 more serious charges does not change that calculus.

24 Finally, the Court is mindful of the potential morass into which such speculative reasoning
25 would lead. This was concisely explained by the Ninth Circuit as follows:

26 > "…[P]lea bargaining decisions are particularly ill-suited for broad judicial oversight. In the
> first place, they involve exercises of judgment and discretion that are often difficult to
27 > articulate in a manner suitable for judicial evaluation. Such decisions are normally made as a
> result of careful professional judgment as to the strength of the evidence, the availability of
28

15

>resources, the visibility of the crime and the likely deterrent effect on the particular defendant and others similarly situated. Even were it able to collect, understand and balance all of these factors, a court would find it nearly impossible to lay down guidelines to be followed by prosecutors in future cases. We would be left with prosecutors not knowing when to prosecute and judges not having time to judge.
>
>The very breadth of the [federal court's] inquiry [into the plea bargaining process] ... would require that the government divulge minute details about the process by which scores, perhaps hundreds, of charging decisions are made. The court would also have to consider the validity of various rationales advanced for particular charging decisions, which would enmesh it deeply into the policies, practices and procedures of the [prosecution]. Finally, the court would have to second-guess the prosecutor's judgment in a variety of cases to determine whether the reasons advanced therefor are a subterfuge.

Moore v. Czerniak, 574 F.3d 1092, 1158 (9th Cir. 2009), quoting United States v. Redondo-Lemos, 955 F.2d 1296, 1299-1300 (9th Cir. 1992, overruled on other grounds, United States v. Armstrong, 48 F.3d 1508, 1515 n. 5 (9th Cir. 1995).

The Court's independent review of the record leads only to the conclusion that Petitioner's counsel was not ineffective for failing to tender a counter-offer to the prosecution. For that reason, the Court recommends that this claim be denied.

### c. Failure To Discuss Trial Strategy.

The petition alleges that when the trial started, Petitioner realized that his attorney had not discussed trial strategy with him. (Doc. 27, p. 8). Later, Petitioner repeats the claim that his attorney "failed to present and keep his client informed of the defense." (Id., p. 9). The contention is not borne out by the present record and, even if it were, Petitioner has not met either prong of Strickland.

As Respondent correctly points out, Petitioner's claim that his attorney had not talked to him about the defense strategy likely stems from the September 2, 2008 pre-trial hearing, in which counsel admitted he had not gone over his defense strategy with Petitioner. (RT Aug. 29, and September 2, 2008). However, at the August 29, 2008 hearing, the trial judge had stopped the proceedings in order to allow Petitioner and his attorney to confer about the nature of his defense. (Id.). At the Marsden hearing, counsel indicated to the judge that he had fully investigated the case, was prepared, and was ready to proceed to trial. (RT, vol. 1, pp. 12-15). During the hearing, counsel told the judge that he had discussed both the prosecution and defense evidence with Petitioner. (Id., p. 15). At no point in the September 2, 2008 hearing did Petitioner indicate to anyone that his attorney had not discussed

trial strategy with him.  Indeed, this issue was first raised by Petitioner on appeal.  Based on the foregoing, the Court finds that the record does not support Petitioner's factual premise, i.e., that his attorney did not discuss trial strategy with him before trial.

However, even were Petitioner's allegations supported, that fact, by itself, does not satisfy either prong of Strickland.  Given that counsel was prepared for trial, had interviewed witnesses, had developed a trial strategy, and had discussed the case with his client, the mere fact that some or all of counsel's "strategy" was not expressly discussed with Petitioner is insufficient to establish that counsel's performance at trial was deficient.  Moreover, Petitioner has not shown any prejudice.  Had counsel discussed his strategy with Petitioner before trial, as Petitioner has demanded, it is difficult to see how that act alone would have given rise to a "reasonable probability" that Petitioner would have prevailed at trial or would have received a more beneficial outcome.  Strickland v. Washington, 466 U.S. at 694.  As mentioned above, a "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  Id.  This record simply does not support any such conclusion.  That being the case, the Court recommends that this claim be denied as well.

## ORDER

The Court HEREBY DIRECTS the Clerk of the Court to substitute the name of William Muniz as the named Respondent in this action.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED with prejudice**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised failure to file objections within the specified time may waive

the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **March 18, 2015**          **/s/ Jennifer L. Thurston**
                                   UNITED STATES MAGISTRATE JUDGE